**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**YARITZA M. SIERRA,**

    **Plaintiff,**

**v.**                                                                     **Case No.:**

**WALGREEN CO.,**

    **Defendant.**

_____/

## COMPLAINT

    Plaintiff, YARITZA M. SIERRA, sues Defendant, WALGREEN CO., and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981.

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 1343 because this action arises under the laws of the United States.

3.    Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices complained of herein occurred in Hillsborough County, Florida.

1

4. At all times material hereto, Defendant conducted substantial business in Hillsborough County, Florida and within this judicial district.

5. At all times material hereto, Defendant employed fifteen (15) or more employees under Title VII.

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging discrimination, harassment, and retaliation based upon race, ethnicity, national origin, and sex.

7. On or about March 30, 2026, Plaintiff received her Notice of Right to Sue from the EEOC.

8. Plaintiff has commenced this action within ninety (90) days of receiving her Notice of Right to Sue.

9. All conditions precedent to maintaining this action under Title VII have been satisfied, waived, or otherwise exhausted.

10. Plaintiff's claims under 42 U.S.C. § 1981 do not require administrative exhaustion.

## PARTIES

11. Plaintiff, YARITZA M. SIERRA ("Plaintiff"), is a natural person and resident of Hillsborough County, Florida.

12. Defendant, WALGREEN CO. ("Defendant" or "Walgreens"), is a foreign corporation authorized to conduct business in the State of Florida.

13. At all times relevant hereto, Defendant owned, operated, managed, and controlled a store located at 8706 West Hillsborough Avenue, Tampa, Florida 33615 ("Walgreens Store #6674").

14. At all times relevant hereto, Defendant acted by and through its agents, servants, employees, supervisors, managers, and representatives, who were acting within the course and scope of their employment and whose conduct is attributable to Defendant.

## GENERAL ALLEGATIONS

15. Plaintiff is Hispanic/Latin woman of Puerto Rican national origin.

16. Plaintiff's primary language is Spanish, and English is her second language. As a result, Plaintiff speaks English with an accent and, at times, experiences difficulty communicating in English.

17. At all times relevant hereto, Defendant was aware of Plaintiff's Hispanic/Latina ethnicity, Puerto Rican national origin, sex, and that English was Plaintiff's second language.

18. Plaintiff initially worked for Defendant in Puerto Rico from approximately 2008 through 2012.

19. Plaintiff satisfactorily performed her job duties and did not experience disciplinary issues or discriminatory conduct and/or treatment while employed at the Walgreens in Puerto Rico.

20. Thereafter, Plaintiff transferred to a Walgreens store in St. Petersburg, Florida, where she worked from approximately 2012 through 2019.

21. During Plaintiff's employment in St. Petersburg, Plaintiff worked with Samuel Harris ("Harris"), a white, non-Hispanic male, who at the time served as an Emerging Store Manager.

22. The Emerging Store Manager is directly managed and supervised by the General Store Manager.

23. During Plaintiff's employment in St. Petersburg, Plaintiff made complaints to Defendant concerning discriminatory conduct and/or treatment by Harris.

24. Despite Plaintiff's complaints, Defendant failed to adequately investigate, correct, or remediate Harris' conduct.

25. Plaintiff's employment with Defendant ended in 2019.

26. In or around June 2021, Plaintiff resumed employment with Defendant at its store located at 4141 West Hillsborough Ave Tampa, FL 3361 ("Walgreens Store #3863").

4

27. Plaintiff satisfactorily performed her job duties and did not experience disciplinary issues or discriminatory conduct and/or treatment while employed at Store #3863.

28. On or about October 4, 2023, Plaintiff transferred to Walgreens Store #6674.

29. Plaintiff transferred to the location after being encouraged to do so for advancement opportunities.

30. At all times relevant hereto, Harris was the General Store Manager. Harris had authority to hire, fire, and promote Plaintiff.

31. When Plaintiff transferred to Walgreens Store #6674, Tony Shilimon ("Shilimon"), an Iraqi male, was the Emerging Store Manager. Shilimon also exercised authority and supervisory control over Plaintiff.

32. Shortly after Plaintiff's transfer to Store #6674, Plaintiff began experiencing discriminatory and hostile treatment based upon her Hispanic/Latina race, ethnicity, Puerto Rican national origin, sex, language, accent, and protected activity.

33. In or around November 2023, Shilimon made discriminatory comments to Plaintiff regarding women in his country, stating in substance that women should be submissive. Shilimon made the statement directly to Plaintiff.

34. During the same period, Shilimon further stated, in substance, that he disliked Hispanic women like her because they "do not listen to men." Shilimon made the statement to Plaintiff while she worked under his supervision.

35.  Shilimon's comments were directed toward Plaintiff and/or made in Plaintiff's presence because of Plaintiff's Hispanic ethnicity, Puerto Rican national origin, and identity as a woman.

36.  Plaintiff found the comments offensive, humiliating, degrading, and discriminatory.

37.  On or about December 26, 2023, Shilimon instructed Plaintiff not to speak to him unless she spoke either "100% English" or "his language."

38.  Shilimon's comments regarding Plaintiff's language and accent were directed at Plaintiff because of her Hispanic ethnicity and Puerto Rican national origin.

39.  Shortly thereafter, Plaintiff verbally complained of ethnicity, national origin, race, and sex discrimination and harassment to Harris regarding Shilimon's comments and conduct towards her during her employment.

40.  Rather than take immediate corrective action, Harris advised Plaintiff to "have patience" because Shilimon would allegedly soon be terminated.

41.  Despite receiving notice of Plaintiff's complaints, Defendant failed to promptly and effectively stop the discriminatory conduct.

42.  In or around March 19, 2024, Plaintiff experienced additional discriminatory and hostile treatment while unloading a truck at work.

43.  During the incident, Shilimon refused to assist Plaintiff and left Plaintiff to unload the truck alone. Shilimon always assisted employees who were not of

6

Hispanic/Latina ethnicity or Puerto Rican national origin, not a woman, and/or did not speak English as a second language.

44. That same day, Plaintiff complained to Harris regarding Shilimon's ethnic, race, sex, and national origin discriminatory and hostile treatment; however, Harris failed or refused to properly investigate the matter. For example, Harris failed or refused to interview any witnesses to any of the incidents about which Plaintiff complained.

45. Around the same period, Harris made discriminatory remarks regarding Hispanic employees and job applicants. Specifically, Harris stated in substance that he did not want to hire more Hispanic employees with accents and that he had "enough with Yaritza."

46. Harris' comments reflected discriminatory animus toward Hispanic, Latino, and Spanish-speaking employees.

47. Plaintiff found Harris' comments humiliating, offensive, and discriminatory.

48. On or around March 2024, Plaintiff and two other Puerto Rican employees sought a Beauty Consultant position with Defendant.

49. Plaintiff was qualified for the position and had relevant experience with Defendant.

50. Plaintiff and the other Puerto Rican employees were informed by Harris that the Beauty Consultant position was unavailable, eliminated, or otherwise would not be filled.

7

51. In or around early April 2024, however, Defendant hired a white, non-Hispanic female into the same or substantially similar Beauty Consultant role.

52. Plaintiff complained regarding discriminatory remarks made by Shilimon concerning Hispanic women and Plaintiff's language and accent.

53. Plaintiff further complained regarding Harris' discriminatory conduct and remarks concerning Hispanic applicants and employees.

54. Shortly after Plaintiff engaged in protected activity, Defendant began materially altering the terms and conditions of Plaintiff's employment.

55. Prior to engaging in protected activity, Plaintiff regularly worked approximately full-time hours.

56. Shortly after Plaintiff's complaints, Defendant drastically reduced Plaintiff's work hours.

57. Plaintiff's schedule was reduced to as little as approximately eight (8) hours during a workweek and substantially reduced in the weeks thereafter.

58. The reduction in hours materially affected Plaintiff's income and working conditions.

59. Upon information and belief, similarly situated non-Hispanic employees were not subjected to comparable reductions in hours.

60. Defendant's reduction in Plaintiff's hours was retaliatory and/or motivated by discriminatory animus.

61.  On or about May 23, 2024, Defendant issued Plaintiff a Final Written Warning based upon allegations that Plaintiff threatened a coworker.

62.  Plaintiff denied the allegations.

63.  Plaintiff requested proof and/or supporting evidence regarding the accusations against her.

64.  Defendant refused to provide Plaintiff with the alleged evidence.

65.  Defendant nevertheless required Plaintiff to sign the Final Written Warning.

66.  When Plaintiff refused to sign the warning because the allegations were false, Plaintiff was informed that she could be terminated if she failed to sign.

67.  Plaintiff signed the warning under duress and only because Defendant threatened termination if she refused.

68.  The Final Written Warning was false, retaliatory, pretextual, and used to create a disciplinary record to support later adverse action.

69.  The discipline occurred shortly after Plaintiff engaged in protected activity and complained about discrimination.

70.  Defendant treated similarly situated non-Hispanic employees more favorably under similar circumstances.

71.  On or about June 13, 2024, Harris referred to Plaintiff as a "bitch."

72.  Harris' conduct was humiliating, offensive, and degrading.

73. Harris' conduct further contributed to the hostile work environment Plaintiff endured because of her ethnicity, race, sex, and national origin.

74. Despite prior complaints concerning Harris and discriminatory conduct at Walgreens, Defendant failed to adequately remediate Harris' conduct.

75. On or about July 26, 2024, Plaintiff became involved in an incident concerning a customer in the photo department.

76. Plaintiff had not been adequately trained regarding photo-editing functions and attempted to assist the customer to the best of her ability.

77. Rather than support Plaintiff, Harris criticized Plaintiff and escalated the incident.

78. Following the incident, Defendant suspended Plaintiff for approximately one week with pay.

79. The suspension lacked legitimate justification and was inconsistent with Defendant's treatment of  situated non-Hispanic employees.

80. Plaintiff further complained to Employee Relations and/or Consumer Relations regarding discriminatory treatment, retaliation, and Harris' conduct.

81. Rather than correct the discrimination and retaliation, Defendant continued and intensified the adverse treatment directed toward Plaintiff.

82. On or about September 6, 2024, Defendant received allegations that Plaintiff had allegedly sent threatening text messages to a coworker.

83. Defendant relied upon the allegations to initiate an investigation into Plaintiff.

84. Plaintiff denied the allegations against her.

85. Plaintiff requested to review the alleged text messages and any supporting evidence relied upon by Defendant.

86. Defendant refused to show Plaintiff the alleged messages or supporting evidence.

87. On or about September 10, 2024, Defendant terminated Plaintiff's employment.

88. Defendant claimed Plaintiff was terminated for allegedly sending threatening text messages to a coworker.

89. Upon information and belief, Defendant's stated reason for Plaintiff's termination was false, retaliatory, and pretextual.

90. Defendant used fabricated, exaggerated, and/or selectively enforced disciplinary allegations to justify terminating Plaintiff after she engaged in protected activity and complained of discrimination.

91. Defendant treated similarly situated non-Hispanic employees more favorably under similar circumstances.

92. Plaintiff was subjected to repeated discriminatory comments and conduct based upon her Hispanic/Latina ethnicity, Puerto Rican national origin, language, and accent.

93.  Plaintiff was subjected to discriminatory comments that Hispanic women "do not listen to men."

94.  Plaintiff was instructed not to speak unless she spoke "100% English" or Shilimon's language.

95.  Plaintiff was subjected to discriminatory remarks concerning Hispanic employees and applicants with accents.

96.  Plaintiff was denied a promotional opportunity after Defendant misrepresented that the Beauty Consultant position was unavailable while later placing a white, non-Hispanic female into the role.

97.  Plaintiff's hours were materially reduced shortly after she engaged in protected activity.

98.  Plaintiff was subjected to false discipline, derogatory comments, suspension, and termination shortly after making complaints of discrimination.

99.  The discriminatory and retaliatory conduct directed toward Plaintiff was frequent, severe, humiliating, threatening to Plaintiff's job security, and interfered with Plaintiff's ability to perform her work.

100. Defendant's conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile, intimidating, humiliating, and abusive work environment.

101. Defendant knew or should have known of the discriminatory and retaliatory conduct directed toward Plaintiff.

102. Despite receiving repeated notice of discrimination and harassment, Defendant failed to promptly and effectively investigate, prevent, or correct the conduct.

103. Defendant instead ratified and/or condoned the conduct by reducing Plaintiff's hours, issuing false discipline, suspending Plaintiff, and ultimately terminating her employment.

104. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, mental anguish, and other economic and non-economic damages.

105. Defendant's actions were intentional, malicious, reckless, willful, and/or undertaken with deliberate indifference to Plaintiff's federally protected rights.

## COUNT I
### Race/Ethnicity Discrimination – Title VII

106. Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

107. This action is brought pursuant to Title VII.

108. At all times relevant hereto, Plaintiff was Hispanic/Latina and therefore a member of a protected class.

109. Plaintiff was qualified for her position and satisfactorily performed her job duties.

110. Defendant, through its agents, supervisors, and managers, intentionally discriminated against Plaintiff because of her Hispanic/Latina race.

111. Defendant subjected Plaintiff to disparate treatment in a manner not imposed upon similarly situated non-Hispanic employees, including but not limited to:

   a. discriminatory remarks concerning Hispanic women;

   b. discriminatory comments concerning Hispanic employees and applicants with accents;

   c. discriminatory comments regarding Plaintiff's language and accent;

   d. denial of promotional opportunities;

   e. reductions in work hours;

   f. false and retaliatory discipline;

   g. suspension; and,

   h. termination.

112. Defendant's discriminatory conduct materially altered the terms, conditions, and privileges of Plaintiff's employment.

113. Defendant's stated reasons for disciplining and terminating Plaintiff were false, retaliatory, and pretextual.

14

114. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

115. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

116. Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

## COUNT II
### National Origin Discrimination – Title VII

117. Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

118. This action is brought pursuant to Title VII.

119. At all times relevant hereto, Plaintiff was of Puerto Rican national origin and therefore a member of a protected class.

120. Plaintiff was qualified for her position and satisfactorily performed her job duties.

121. Defendant, through its agents, supervisors, and managers, intentionally discriminated against Plaintiff because of her Puerto Rican national origin.

122. Defendant subjected Plaintiff to disparate treatment in a manner not imposed upon similarly situated non-Puerto Rican and/or non-Hispanic employees, including but not limited to:

    a.  discriminatory comments concerning Hispanic women;

    b.  discriminatory remarks concerning Plaintiff's language, accent, and ethnicity;

    c.  discriminatory comments concerning Hispanic employees and applicants with accents;

    d.  denial of promotional opportunities;

    e.  reductions in work hours;

    f.  false and retaliatory discipline;

    g.  suspension; and,

    h.  termination.

123. Defendant's discriminatory conduct materially altered the terms, conditions, and privileges of Plaintiff's employment.

124. Defendant's conduct toward Plaintiff was motivated by discriminatory animus concerning Plaintiff's Puerto Rican origin, Hispanic ethnicity, language, and accent.

125.   Defendant's stated reasons for disciplining and terminating Plaintiff were false, retaliatory, and pretextual.

126.   As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

127.   Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under Title VII.

128.   Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

## COUNT III
### Sex Discrimination – Title VII

129.   Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

130.   This action is brought pursuant to Title VII.

131.   At all times relevant hereto, Plaintiff was female and therefore a member of a protected class.

17

132. Plaintiff was qualified for her position and satisfactorily performed her job duties.

133. Defendant, through its agents, supervisors, and managers, intentionally discriminated against Plaintiff because of her sex.

134. Defendant subjected Plaintiff to disparate treatment because of her sex, including but not limited to:

   a. comments that women should be submissive;

   b. comments that Hispanic women "do not listen to men";

   c. denial of promotional opportunities;

   d. reductions in work hours;

   e. false and retaliatory discipline;

   f. suspension; and,

   g. termination.

135. Defendant's discriminatory conduct materially altered the terms, conditions, and privileges of Plaintiff's employment.

136. Defendant's conduct toward Plaintiff was motivated by discriminatory animus concerning Plaintiff's sex.

137. Upon information and belief, similarly situated male employees were not subjected to comments that men should be submissive, comments that men do not listen to women, or similar gender-based derogatory remarks.

18

138.   Defendant's stated reasons for disciplining and terminating Plaintiff were false, retaliatory, and pretextual.

139.   As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

140.   Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under Title VII.

141.   Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

## COUNT IV
### Hostile Work Environment – Title VII

142.   Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

143.   This action is brought pursuant to Title VII.

144.   Plaintiff belongs to protected classes based upon her Hispanic/Latina race, Puerto Rican national origin, and sex.

19

145. Plaintiff was subjected to unwelcome harassment based upon her race, national origin, and sex.

146. Defendant, through its supervisors and agents, subjected Plaintiff to repeated discriminatory and harassing conduct, including but not limited to:

a. comments that Hispanic women "do not listen to men";

b. comments that women should be submissive;

c. comments instructing Plaintiff not to speak unless she spoke "100% English" or Shilimon's language;

d. discriminatory remarks regarding Hispanic employees and applicants with accents;

e. humiliating, degrading, and offensive comments regarding Plaintiff's language and ethnicity;

f. denial of promotion opportunities;

g. retaliatory reduction of hours;

h. false disciplinary actions;

i. derogatory comments directed at Plaintiff, including being called a "bitch";

j. suspension; and,

k. termination.

147. The harassment directed toward Plaintiff was based upon Plaintiff's race, national origin, and sex.

148. The discriminatory conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile, intimidating, humiliating, and abusive working environment.

149. Plaintiff subjectively perceived the environment as hostile and abusive.

150. A reasonable person in Plaintiff's position would likewise perceive the environment as hostile and abusive.

151. Defendant knew or should have known of the harassment and hostile conduct because Plaintiff repeatedly complained to management, loss prevention, Employee Relations, and/or other reporting channels.

152. Despite receiving notice of Plaintiff's complaints, Defendant failed to promptly and effectively investigate, stop, or remediate the harassment.

153. Defendant instead tolerated, ratified, condoned, and/or failed to correct the discriminatory conduct.

154. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer lost wages, emotional distress, embarrassment, humiliation, mental anguish, and other damages.

155. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under Title VII.

156. Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

**COUNT V**
**Retaliation – Title VII**

157. Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

158. This action is brought pursuant to Title VII.

159. Plaintiff engaged in protected activity by opposing discrimination, harassment, and hostile treatment based upon her race and national origin.

160. Plaintiff complained regarding discriminatory comments made by Shilimon concerning Hispanic women, Plaintiff's language, accent, and ethnicity.

161. Plaintiff further complained regarding discriminatory comments and conduct by Harris concerning Hispanic employees and applicants.

162. Plaintiff complained to management, loss prevention, Employee Relations, Consumer Relations, and/or other internal reporting channels.

163. Defendant had actual knowledge of Plaintiff's protected activity.

164. Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including but not limited to:

    a.  reduction of Plaintiff's work hours;

    b.  false and pretextual discipline;

    c.  issuance of a Final Written Warning;

    d.  suspension;

    e.  heightened scrutiny and hostile treatment; and,

    f.  termination.

165. The adverse employment actions occurred shortly after Plaintiff engaged in protected activity.

166. Defendant's actions would dissuade a reasonable employee from engaging in protected activity.

167. Defendant's stated reasons for disciplining and terminating Plaintiff were false, retaliatory, and pretextual.

168. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to the adverse actions described herein.

169. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

170. Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

## COUNT VI
### Race/Ethnicity Discrimination – 42 U.S.C. § 1981

171. Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

172. This action is brought pursuant to 42 U.S.C. § 1981.

173. Plaintiff is Hispanic/Latina and belongs to a protected racial and ethnic class under 42 U.S.C. § 1981.

174. At all times relevant hereto, Plaintiff had a contractual employment relationship with Defendant.

175. Defendant, through its agents, supervisors, and managers, intentionally discriminated against Plaintiff on the basis of her Hispanic ethnicity and race.

24

176. Defendant interfered with Plaintiff's right to make and enforce contracts on equal terms with non-Hispanic employees.

177. Defendant subjected Plaintiff to disparate treatment in a manner not imposed upon similarly situated non-Hispanic employees, including but not limited to:

  a. discriminatory comments concerning Hispanic women;

  b. discriminatory remarks regarding Plaintiff's language and accent as proxies for Hispanic ethnicity

  c. discriminatory comments concerning Hispanic applicants and employees;

  d. denial of promotional opportunities;

  e. reductions in work hours;

  f. false disciplinary action;

  g. suspension; and,

  h. termination.

178. Defendant's discriminatory conduct materially altered the terms, conditions, and privileges of Plaintiff's employment.

179. Defendant's conduct was intentional and motivated by discriminatory animus toward Plaintiff's Hispanic ethnicity and race.

180. Defendant's stated reasons for disciplining and terminating Plaintiff were false, retaliatory, and pretextual.

181. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

182. Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

### COUNT VII
### Hostile Work Environment – 42 U.S.C. § 1981

183. Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

184. This action is brought pursuant to 42 U.S.C. § 1981.

185. Plaintiff is Hispanic/Latina and belongs to a protected racial and ethnic class under 42 U.S.C. § 1981.

186. Plaintiff was subjected to unwelcome harassment based upon her race and ethnicity.

187. Defendant, through its supervisors, managers, and agents, subjected Plaintiff to repeated discriminatory and harassing conduct, including but not limited to:

   a.  comments that Hispanic women "do not listen to men";

b. comments instructing Plaintiff not to speak unless she spoke "100% English" or Shilimon's language;

c. discriminatory remarks concerning Hispanic employees and applicants with accents;

d. humiliating and degrading comments concerning Plaintiff's language, accent, and ethnicity;

e. denial of promotional opportunities;

f. retaliatory reductions in hours;

g. false disciplinary actions;

h. derogatory comments directed toward Plaintiff, including being called a "bitch";

i. suspension; and,

j. termination.

188.   The harassment directed toward Plaintiff was because of Plaintiff's Hispanic race and ethnicity.

189.   The discriminatory conduct was severe and pervasive and materially altered the terms, conditions, and privileges of Plaintiff's employment.

190.   Plaintiff subjectively perceived the work environment as hostile, abusive, humiliating, and intimidating.

191.   A reasonable person in Plaintiff's position would perceive the environment as hostile and abusive.

192.   Defendant knew or should have known of the discriminatory conduct because Plaintiff repeatedly complained to management, loss prevention, Employee Relations, Consumer Relations, and/or other reporting channels.

193.   Despite notice of the discriminatory conduct, Defendant failed to promptly and effectively investigate, stop, or remediate the harassment.

194.   Defendant tolerated, ratified, condoned, and/or failed to correct the discriminatory conduct.

195.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

196.   Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

## COUNT VIII
### Retaliation – 42 U.S.C. § 1981

197. Plaintiff realleges and incorporates Paragraphs 1 through 105 as if fully set forth herein.

198. This action is brought pursuant to 42 U.S.C. § 1981.

199. Plaintiff engaged in protected activity by opposing race and/or ethnicity-based discrimination and harassment.

200. Plaintiff complained regarding discriminatory comments concerning Hispanic women, Hispanic employees, Plaintiff's language, Plaintiff's accent, and discriminatory treatment based upon her Hispanic ethnicity.

201. Plaintiff made complaints to management, loss prevention, Employee Relations, Consumer Relations, and/or other reporting channels regarding race and ethnicity discrimination.

202. Defendant had actual knowledge of Plaintiff's protected activity.

203. Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including but not limited to:

    a. reduction of Plaintiff's work hours;

    b. false and pretextual discipline;

    c. issuance of a Final Written Warning;

    d. suspension;

    e. heightened scrutiny and hostile treatment; and,

    f. termination.

204. The materially adverse actions occurred after Plaintiff engaged in protected activity and were temporally and causally connected to Plaintiff's complaints of race and ethnicity discrimination.

205. Defendant's actions would dissuade a reasonable employee from opposing race and ethnicity discrimination.

206. Defendant's stated reasons for disciplining, suspending, and terminating Plaintiff were false, retaliatory, and pretextual.

207. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to the adverse actions described herein.

208. Defendant retaliated against Plaintiff for opposing race and ethnicity discrimination and, through that retaliation, interfered with Plaintiff's right to make and enforce contracts on equal terms under 42 U.S.C. § 1981.

209. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

210. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

211. Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

30

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, taxable costs, and all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 29, 2026.

Respectfully submitted,

*/s/ Antonio D. Dowels*
Antonio D. Dowels, Esq.
Florida Bar No. 1003436
antonio.dowels@wefighttowin.com
Pamela C. Papasov, Esq.
Florida Bar No. 1004434
pamela.papasov@wefighttowin.com
Kevin F. Boucher, Esq.
Florida Bar No. 1000328
kevin.boucher@wefighttowin.com
PAPASOV LAW GROUP, PLLC
2339 West La Salle Street
Tampa, Florida 33607
Telephone: (833) 813-2946
Counsel for Plaintiff